UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DONNA S. DALTON, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:09-cv-648-SEB-TAB |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Donna S. Dalton ("Dalton") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. Background**

Dalton filed applications for SSI and DIB on February 15, 2005, alleging an onset date of disability of February 9, 2005. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a video hearing was conducted on August 7, 2008. Dalton appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Dalton and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on September 24, 2008. On April 21, 2009, the Appeals Council denied Dalton's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Dalton met the insured status requirements of the Act through December 31, 2009; (2) Dalton had not engaged in substantial gainful activity since February 9, 2005, the alleged onset date; (3) Dalton had the following severe combination of impairments: mood disorder NOS, anxiety disorder NOS, borderline intellectual functioning, history of right ankle fracture, personality disorder, and asthma; (4) Dalton did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Dalton had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); and (6) Dalton was able to perform any past relevant work as a press operator (laundry) and assembler as performed and as usually performed in the national economy, as these jobs did not require the performance of work-related activities precluded by her RFC. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Dalton had not been under a "disability," as defined in the Act, from February 9, 2005, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Dalton had a combination of severe impairments consisting of mood disorder (not otherwise specified), anxiety disorder (not otherwise specified), borderline intellectual functioning, history of right ankle fracture, personality disorder, and asthma, but that she could perform her past relevant work as a press operator (laundry) and assembler. (R. at 13-14).

Dalton asserts three reasons why the ALJ's decision should be reversed and remanded for further consideration. First, Dalton argues that the ALJ found that Dalton has a severe mental impairment, but failed to make a mental RFC assessment. As a result, she contends, the ALJ's RFC failed to take into account Dalton's severe mental and emotional limitations.

The Commissioner concedes that the ALJ erred in failing to include mental impairment limitations in his RFC finding, but argues that the error was harmless. The Commissioner suggests that because the ALJ included in the hypothetical question posed to the vocational expert an assumption that the individual would be limited to simple, routine and repetitive tasks, the ALJ's decision in that regard is supported by substantial evidence.

There are two problems with the Commissioner's response. First, the Commissioner's *post hoc* characterization is not helpful under the circumstances. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ"). Second, the Seventh Circuit has rejected the Commissioner's contention that an ALJ may account for a claimant's mental impairments by restricting her to simple routine tasks. *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (limiting hypothetical to "simple" tasks does not adequately account for plaintiff's mental impairments, including moderate difficulties in maintaining concentration, persistence and pace) (citing cases). The action must be remanded for further consideration of Dalton's mental impairments and their inclusion in the ALJ's RFC assessment.

Next, Dalton argues that the ALJ failed to explain why he impliedly rejected the opinion of consultative physician Dr. Bradley that Dalton was able to stand and walk for 2 hours in an 8 hour day and may have some difficulty walking, and difficulty standing for extreme periods of time due to right foot pain. (R. at 211). The ALJ concluded that Dalton

3

could perform light work on a full-time basis. "Light work" is characterized as lifting a maximum of twenty pounds occasionally, with frequent lifting or carrying of up to ten pounds, standing or walking off and on for a total of six hours during an eight-hour workday, intermittent sitting, and using hands and arms for grasping, holding and turning objects. *Clifford v. Apfel*, 227 F.3d 863, 869 n.2 (7th Cir. 2000) (citing 20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10). The ALJ's finding that Dalton could perform light work is inconsistent with Dr. Bradley's opinion.

Dalton fractured her ankle in a motor vehicle accident in 2001, after which she underwent complex surgery requiring a pin. (R. at 16, 209). She injured her angle again in January of 2005 after another motor vehicle accident. (R. at 16). The ALJ acknowledged that Dalton was obese. *Id.* The ALJ noted that Dalton testified that she could not engage in prolonged standing, walking and climbing stairs. (R. at 17). She testified that her ankle pain was precipitated by overuse, walking and standing, and she had to rest to control the pain. (R. at 15). Her sister also reported that Dalton could not be on her feet for long periods of time, she could not stand more than 15-20 minutes, she climbed stairs one at a time, and could walk in a store only 15-20 minutes and then had to rest before she could resume walking. *Id.*[1] The ALJ noted that "[a]lthough [Dalton] alleges she can stand only ¼ to ½ hour this appears to be at one time and does not account for movement through an 8-hour day." (R. at 17). The ALJ concluded that Dalton's "extensive daily activity and lack of objective evidence to the contrary support a finding that she could perform at least light work." *Id.*

The ALJ does not specify what he characterizes as "extensive daily activity." The daily activities cited by the ALJ were that Dalton was on the telephone two hours a day, she sewed and did word search games, she shopped using a cart, she dusted[2] and helped with laundry, and a social worker assisted her two to three times a week. (R. at 16). None of these activities rise to the level of "extensive" activity nor do they require standing or walking six hours in an eight hour period. Dalton and her sister consistently reported that Dalton experienced an inability to walk and stand for extended periods of time. In addition, while objective findings after the second ankle injury indicated that Dalton had good ankle mobility and no instability, there was no finding that the ankle fractures and post-surgery condition did not still cause pain. Dr. Bradley opined in April 2005 that Dalton's right ankle was tender to palpation and that she could walk and stand for a total of two hours in an eight hour day. (R. at 16, 210). The ALJ noted that Dr. Bradley advised that Dalton may have some difficulty standing for extreme periods of time due to right foot pain, but he did not recite the two hour limitation. (R. at 16). Dr. Bradley also stated that Dalton may have difficulty walking. (R. at 211). The ALJ did not state what weight he assigned to Dr. Bradley's limitations.

---

[1]The ALJ does not state to what extent he found the sister's statements credible, leading the court to conclude that they should be taken as true. Indeed, the ALJ's conclusion as to Dalton's own credibility is never stated in an affirmative manner.

[2]Dalton, in fact, testified that she could not dust or vacuum because dust had caused her breathing problems. (R. at 803).

The Commissioner suggests that the ALJ did not purport to adopt the entirety of Dr. Bradley's opinion and that the ALJ's finding that Dalton could perform light work was supported by the opinion of the state agency physicians. The court cannot assume, however, that the ALJ simply adopted the finding of the state agency physicians that Dalton could stand or walk six hours in an eight hour day. There is conflicting evidence as to Dalton's ability to stand and walk. The expressed basis for the ALJ's finding that she could stand or walk six hours in an eight hour day was Dalton's "extensive daily activity" and the "lack of objective evidence." As noted above, the daily activities and objective evidence described by the ALJ do not support his conclusion as to Dalton's ability to stand and walk. In reviewing the ALJ's decision, "a court must confine itself to the reasons supplied by the ALJ." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Moreover, to the extent the ALJ accepted Dalton's testimony that she could only stand ¼ to ½ hour at a time, he did not include that limitation in the hypothetical question posed to the vocational expert. Under these circumstances, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted). Accordingly, the ALJ's finding that Dalton could stand and walk six hours in an eight hour day is not supported by substantial evidence. The action must be remanded for further consideration of this issue.

Dalton's third claim is that the ALJ erred in finding that Dalton could perform some of her past relevant work. She contends that none of her work in the past 15 years was substantial gainful activity ("SGA"), and, therefore, none of her past jobs could provide a basis for a denial at step four of the sequential process. Dalton argues that with respect to two jobs she held in 1995 and in 1996, respectively, either she did not earn $500 a month as required to qualify as SGA or the jobs were too short in duration to qualify as past relevant work. The parties disagree as to how many months Dalton worked and how much she earned at the two short term jobs.

Past work is generally presumed to be an "unsuccessful work attempt" when a plaintiff is unable to perform work for less than three months and is forced to quit the work due to her impairment. *Sample v. Shalala*, 999 F.2d 1138, 1142 (7th Cir. 1993). The ALJ did not discuss the earnings records, the time period during which Dalton performed her past jobs, or the reasons Dalton lost those jobs. In light of the parties' differing views of the earnings evidence, it is not clear on what basis the ALJ concluded that Dalton's past jobs were SGA. Under these circumstances and because the case is being remanded on the basis of two other issues which may moot out this final issue, the court finds it unnecessary to discuss it further. On remand, if the ALJ again finds that Dalton was capable of performing her past relevant work at step four, he shall describe with greater specificity his rationale for and the evidence which supports that conclusion.

### III.  Conclusion

For the reasons discussed in this Entry, the ALJ's conclusions are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

On remand, the ALJ shall make a mental RFC assessment and include appropriate mental and emotional limitations in his RFC finding. The ALJ shall also reconsider his finding that Dalton could stand and walk six hours in an eight hour day. The ALJ shall incorporate each of these findings into the hypothetical question posed to the vocational expert, and if he finds that Dalton could perform any past relevant jobs, he shall discuss on what basis such jobs constitute SGA.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/17/2010

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana